FRINT MOTOR CAR COMPANY, Respondent, vs. GENERAL
ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION,
LTD., Appellant.

*November 19—December 14, 1920.*

*Workmen's compensation: Employee engaged in automobile racing:
Insurance: Liability: Hazardous risk.*

A compensation policy in general terms, procured by an auto-
mobile dealer complying with the workmen's compensation
act (sub. 2, sec. 2394—24, and sub. 1, sec. 2394—27), covers
a mechanic employed as a pitman during an automobile race
who was killed while venturing onto the track, although the
insurer had not filed premium rates or classification of em-
ployees engaged in automobile racing and there was some
evidence that the insured employer, compelled to pay com-
pensation, had not regarded accidents occurring during auto-
mobile races as covered by the policy.

APPEAL from a judgment of the circuit court for Mil-
waukee county: G. N. RISJORD, Judge. *Affirmed.*

Action on an insurance policy to recover a loss sustained under the workmen's compensation act, secs. 2394—1 to 2394—31, Stats. Plaintiff had judgment in the trial court and the defendant insurance company appeals.

Respondent was engaged in the business of buying, selling, demonstrating, and dealing in automobiles in Milwaukee and throughout Wisconsin and maintained a warehouse, garage, and repair shop in connection therewith. For the purpose of advertising, and as its officers said "demonstrating," the cars which it had to sell, respondent from time to time entered cars in races in the territory in which it did business. It did not treat this racing as a separate business, but considered it a part of its business of selling cars.

One Carl Healey was in respondent's employ as a mechanic. He worked on the machinery of cars, and it was part of his business to prepare the cars used in the races for that purpose. During races he was at times used as a "pitman," stationed in an inclosure adjacent to the inner edge of the race track and separated from the latter by a fence. On August 5, 1917, he was so engaged. It was his duty to work on cars at the pit and to have charge of supplies and spare parts and hand them out to those who drove his employer's cars in the races. He was instructed not to enter the track while they were in progress.

During the race one of respondent's cars had trouble and stopped on the track some distance from the pit. Healey entered the track, as it was shown pitmen did at times despite instructions, and ran toward the car. There was a collision with another car and he was killed.

A claim under the workmen's compensation act was opposed on the grounds, *inter alia*, that Healey was not performing services growing out of and incidental to his employment when he was killed and that his employment as a pitman was casual. Both these contentions failed and the award of the industrial commission was affirmed in this

court.  *Frint Motor Car Co. v. Industrial Comm.* 168 Wis. 436, 170 N. W. 285.  Thereupon respondent paid the award.

Respondent was not exempted from being insured under the compensation act as to the whole or any part of its business.  It carried insurance with the appellant company and brought this action to recover the amount of the award which it had been compelled to pay.

Material portions of the policy of insurance read as follows:

### "WISCONSIN COMPENSATION POLICY."

"A.  .  .  .  [Appellant] agrees to assume and pay all liability, loss and obligation for accidental injuries or death, suffered while this policy is in force at the place or places of work and in the operation of the business described herein, by the employees of  .  .  .  [respondent], under the provisions of the workmen's compensation act of Wisconsin, as set forth in  .  .  .  secs. 2394—1 to 2394—31 inclusive, according to the provisions of said act, except the liability of the assured for penalties for misdemeanors imposed by secs. 2394—16 and 2394—24 of said act."

."E.  This policy does not cover any loss, liability or obligation of the assured for injury to or death of any employees of the assured, whose compensation is not included in the schedule hereinafter set forth.  The estimated compensation includes, and the adjustment of same will include, all compensation of every kind earned by all officials and employees of the assured described in said schedule, on page 3 hereof, including the amount paid to contractors and subcontractors."

"(10) No condition or provision of this policy shall be waived or limited except by written indorsement attached hereto, signed by the United States manager."

### "SCHEDULE."

"4. Location of all places where the work undertaken by the assured is performed, including shops, yards, offices, work-places or premises of the assured: Milwaukee and elsewhere in state of Wisconsin.

Frint M. C. Co. v. General A., F. & L. A. Corp. 173 Wis. 109.

| Description of work covered by this policy and classification of risk. | Estimated annual remuneration. | Premium rate per $100 of remuneration. | Advance premium. |
|---|---|---|---|
| (a) All operations [not included in subdivisions (b) and (c)] necessary and incidental to the performance of the work herein described as follows: Operating automobile salesroom, garage and repair shop. The buying, selling, demonstrating and dealing in automobiles throughout the state of Wisconsin ............ | $6,840.00 | $0.90 | $61.56 |
| (b) Work done at the shops, yards or other work-places or premises of the assured as above located, or work done in connection with or preparation for the work described in (a) foregoing (mining or blasting excluded). | | | |
| (c) Elective officers—Office duties only ........... | Excluded. | | |
| Executive officers superintending or doing manual labor ................. | If any. | 0.90 | |
| Traveling salesmen ..... | 4,200.00 | .14 | 5.88 |
| Clerical force—Engaged in office duties exclusively ................. | 2,400.00 | .07 | 1.68 |
| Draughtsmen—Office duties exclusively ........ | No exceptions. | | |
| Drivers—Wherever engaged ................ | Included under Item (a) above. | | |
| Chauffeurs—Wherever engaged ................ | Included under Item (a) above. | | |
| Alterations and repairs and additions ............ | If any. | $4.00 | |
| Total premium sixtynine and 12/100 dollars ............... | | | $69.12 |

"6. If work is done by the assured, or contractors or subcontractors of the assured, and which is not included in the descriptions given, then this policy shall be construed to cover such work and a premium charge made in respect thereof according to the premium rates in use by this corporation, pursuant to sec. 2394—6 of the said act, and if done by contractors or subcontractors shall be based on the amount paid to such contractors and subcontractors."

Besides the facts heretofore stated the trial court found:

"(6) . . . That Healey's work was not materially different at the time of the accident from that which he ordinarily did; that he was a mechanic, kept cars in proper condition and was working as such mechanic and pitman in the regular course of his employment at the time of the accident.

"(7) That at the time the said policy was issued to the plaintiff, the representative of the defendant located at Milwaukee knew that the plaintiff had been engaged to some extent in demonstrating its cars by racing them, and that some of its employees were used in looking after the cars on the racing ground.

"That the racing of its cars by the plaintiff was for the purpose of furthering the sales of its machines, and while it was not the usual method of demonstrating its cars, the plaintiff was engaged in racing for the purpose of furthering its sales, and that racing to that extent was incidental to the operation of the business described in said policy of insurance, but was not a necessary undertaking for that purpose, and not generally incidental thereto.

"(8) That the plaintiff did not maintain a separate organization for the purpose of racing and that nothing appeared on its books or pay-roll to indicate that any of its employees were engaged in such capacity, and the men upon the cars, while racing, were not regularly in plaintiff's employ.

"(9) That during the life of the said policy there were no premium rates on file with the industrial commission of Wisconsin by the defendant covering persons engaged in any manner in automobile racing, nor any classification of any employees so engaged, and that at the time the said policy was issued none of the companies engaged in the business of writing workmen's compensation insurance accepted insurance on persons engaged in automobile racing, and that prior to the time the said policy was issued, plaintiff so knew that the defendant would not write insurance on employees engaged in automobile racing."

The trial court decided that Healey was not employed in racing at the time of the accident and that the provisions of the insurance policy connected themselves up closely with

the compensation act and covered the employment in question. He concluded that respondent was entitled to recover, and judgment was entered accordingly.

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles*.

For the respondent there was a brief signed by *Upham, Black, Russell & Richardson,* attorneys, and *Charles W. Reeder,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Reeder*.

JONES, J.   When the action between the respondent and Healey, the employee, came before this court, the nature of his employment was in issue and the following language was used in the opinion:

"He was a regular employee of appellant, and his work was not materially different at the time of the accident from that which he ordinarily did.   He was a mechanic, kept cars in proper condition, and was working in the regular course of such employment at the time of the injury, therefore his employment was not casual."

It is conceded by appellant that when the accident occurred the employee was in the regular scope of his employment, but it is claimed that he was engaged in racing when killed and that his death was the result of a hazard which was not insured.   As supporting this contention it is argued, among other things, that the respondent knew that appellant could not write insurance on employees engaged in racing; that racing was a prohibited risk which was known to respondent; that respondent knew that no classification or rates of premium including racing was on file with the industrial commission and that policies could only be written for risks contained in such classification.

It is further argued that Healey's work as a pitman was more hazardous than the ordinary work in the garage, and that to extend the meaning of the policy to cover the hazard

of racing would be discriminatory and contrary to the language of the statute existing when the policy was issued.

Of course the language of the policy and the statute must be the chief guide in determining whether the policy covered this risk. Clause A, quoted above, is very broad and general in its terms and is intended to give protection for accidental injuries or death suffered at the places and in the kinds of business described. The description of the work included in the schedule is also quite comprehensive.

Appellant's counsel claim that clause E of the policy, above quoted, which excepts any loss or liability for injury or death not included in the schedule, should prevent a recovery. This clause, however, must be construed in connection with paragraph 6, above quoted, which provides that if work is done not included in the description given, the policy shall be construed to cover such work, and provides for making the premium charge in the mode specified. Appellant's counsel give to this clause a very free construction, arguing that it has a different meaning from that expressed in the language used in its literal sense. And they claim that it cannot be said to cover a prohibited risk. There is no express prohibition in the policy or the statute against extending insurance to the kind of work in which Healey was engaged or even against actual racing. The fact that a kind of work is hazardous or more hazardous than other forms of work does not preclude insurance.

The policy must be interpreted in connection with the statutes on the subject (sub. 2, sec. 2394—24, and sub. 1, sec. 2394—27). The former statute provides: "An employer liable under this act to pay compensation shall insure payment of such compensation in some company authorized to insure such liability in this state unless such employer shall be exempted from such insurance by the industrial commission." The statute then proceeds to state the mode of obtaining the exemption.

The respondent had elected to become subject to the terms

of the act and at no time obtained any exemption. In view of these facts it is fair to presume that both respondent and appellant knew that, if any insurance was taken, all the employees in the regular course of employment should be covered. And we do not consider that the insurance company was relieved from the obligation of the contract and the language actually used therein because it had not filed premium rates nor a classification of employees engaged in racing.

Much of appellant's argument bearing on the intention and knowledge of respondent is based upon the fact that it paid employees for minor injuries incurred in previous races and had paid its drivers for injuries received in the same race in which Healey was killed, and had made no claim upon appellant for reimbursement. It is said that "this shows that assured did not consider racing covered until they had a real expensive accident." This position is untenable. None of the previous accidents are shown to have occurred during the period that the policy in question was in force. We are not shown the terms of previous policies. Even if respondent did not consider this class of injuries covered under previous policies, it shows nothing as to its understanding of its rights under this policy, which was drawn under its direction to have it cover all employees. If it showed anything it would show that injuries of the kind in question may have been in respondent's mind as those not previously covered and for which it then wanted insurance. That respondent did not make claim for reimbursement for amounts paid to its drivers who were injured in this race is not very significant, for they were engaged only for the occasion in the absence of its regular drivers.

The claim of knowledge of respondent that racing was uninsurable is further based upon the fact that it had been refused a personal accident policy upon a race driver. This seems to us an entirely different matter from the insurance, under the compensation act, of a whole automobile business,

including all the employees engaged in the various activities not infrequently carried on by those in the business, including such duties as were performed by Healey at occasional races on fair grounds and tracks in the territory where they did business for the purpose of showing off and advertising their cars.

Considerable other testimony was given by both parties relating to the knowledge and intention of respondent and appellant at the time the policy was issued. There might be language in a policy so doubtful or ambiguous that parol evidence of this character would be quite controlling in interpreting its real meaning. But as we construe the policy, in connection with the statute and the former decision of this court above quoted, this is not such a case.

It is significant that the only exception found in the schedule relates to mining and blasting. Applying the ordinary rules for the construction of insurance policies, if the company had intended to avoid liability suffered in other kinds of work in this business of the respondent the exemption should have been expressed.

Appellant urges that the familiar rule as to the strict construction of policies against the insurer does not apply in this case because, it is claimed, respondent framed the policy. We do not feel the need of relying on this rule, but it should be noted that we find no proof that the insured wrote the policy, but merely that the insurance agent was referred to its attorneys to see that it was properly covered.

It is our holding that the risk was carried by the appellant.

*By the Court.*—Judgment affirmed.