173 P.2d 84

**WEST CHANDLER FARMS CO. v. INDUS-TRIAL COMMISSION et al.**

No. 4861.

Supreme Court of Arizona.

Oct. 7, 1946.

384

Moeur & Moeur and Charles N. Walters, all of Phœnix, for petitioner.

H. S. McCluskey and John R. Franks, both of Phœnix, for Industrial Commission.

Guynn & Twitty, of Phœnix, for respondent Trout.

Jennings, Salmon & Trask, Henry S. Stevens, and J. A. Riggins, Jr., all of Phœnix, amici curiae.

MORGAN, Judge.

During the year 1944 petitioner was engaged in operating and managing the business enterprises of George Taylor & Sons, consisting of farming and cattle raising. In the spring of that year it entered into a verbal agreement with James G. Trout, providing that Trout, who owned a hay baler, would furnish it, his own crew and equipment, and bale all hay suitable on the Taylor ranches, for $4 per ton. This was later changed to provide a bonus of 25¢ per ton. Trout was allowed the use of certain houses on the ranch where the crew lived and were fed. One baler being insufficient, petitioner delivered a second baler to Trout under a verbal conditional sales agreement, and the latter operated both balers, furnishing all equipment and supplies. He hired all employees and paid their compensation and other expenses out of the contract price. Under the agreement the hay was not to be baled when too green or too dry. Bales were to be approximately 150 pounds in weight.

About July first, Trout employed the applicant, Lowell E. Webb, a boy of the then age of fourteen and one-half years, as the baler tractor operator, his compensation being 25¢ for each ton baled by the baler upon which he was working. Trout spent little time on the job. George Taylor, representing the petitioner, visited the operation frequently, and at times almost daily. He objected to the manner in which the work was being done. Sometimes he was there two or three times a day. The evidence disclosed that Taylor gave orders respecting the stacking of bales, their packing and wiring, gave directions to tighten the baler, and the effect of Trout's testimony is that petitioner had the right to terminate the work at any time. A. E. Coplan, petitioner's foreman, stopped the baler on two or three occasions, and also gave instructions with respect to how the work was to be done, when to start and when to stop, as to the piling of bales, and other matters.

On August 5th, while operating the tractor, applicant was injured by a pitchfork hurled from a moving belt, the tine of which punctured one eye, resulting in the loss of its sight. At the time of this accident petitioner held a policy of insurance with the Industrial Commission of Arizona, covering all of its employees protected by the Workmen's Compensation Law, but which contained the following provision: "Independent contract plowing and other independent contract work is not covered under this policy unless same is requested."

Petitioner considered Trout an independent contractor. No premiums were paid by it on Trout and the baling crew.

The applicant personally and through his guardian duly elected to pursue his remedy under the Workmen's Compensation Law. Claim filed by applicant with the commission against petitioner and others was resisted by petitioner on the ground that it was not his employer, since applicant was an employee of Trout, an independent contractor. The commission rejected this claim and entered an award against petitioner as the defendant employer. The petitioner then offered to pay to the commission premiums due on Trout and his baling crew, on the theory that they were its employees as found by the commission, but upon the understanding that the commission, as insurance carrier, would assume payment of the award. This offer was rejected by the commission. From the award and from denial of petitioner's motion for rehearing, petitioner has brought this appeal.

The commission made rather elaborate findings, but we think it necessary to notice only the following which, in the interest of brevity, we paraphrase:

(3) Applicant at the time of the accident was employed in Arizona upon the premises of petitioner in the regular and usual course of its business, and it had in its service applicant and three or more workmen employed in the use of machinery who were subject to the Arizona Workmen's Compensation Law;

(8) The right of supervision and control was reserved and exercised by petitioner, and, therefore, James G. Trout was not an independent contractor;

(13) The petitioner employer is estopped to claim benefits of any insurance coverage under the policy issued to it by the commission;

(14) To (17) inclusive: The defendant employer, West Chandler Farms, Inc., is liable to the applicant for accident benefits, including medical services, hospitalization, temporary total disability and compensation for total loss of the sight of the right eye, and for such other disability as may be incident thereto;

(18) The commission, defendant insurance carrier, is secondarily liable to the applicant.

Findings based upon illegality of the minor's services, as being in violation of the child labor laws, present no issuable controversy, and will therefore be disregarded.

The appeal, as we see it, presents only two questions: (1) Does the evidence support the commission's finding that Trout was not an independent contractor; (2) is the petitioner estopped, under the circumstances, to claim the benefits of insurance coverage under its policy of insurance.

It is settled by numerous decisions of this court that the findings of the commission are to be given the same consideration as those of a jury or trial judge. When there is reasonable evidence to support the award, or the facts are such that reasonable men might draw either of two inferences therefrom, the findings of the commission must be sustained. Grabe v. Industrial Comm., 38 Ariz. 322, 299 P. 1031; King v. Orr, 59 Ariz. 234, 125 P.2d 699; Smith v. Aluminum Co. of America, 62 Ariz. 160, 155 P.2d 628; Tashner v. Industrial Comm., 62 Ariz. 333, 157 P.2d 608. The statute, sec. 56-928, A.C.A.1939, as amended by Chap. 33, Laws of 1945, sets out the rules for determining whether a contractor is independent or an employee of the original employer:

"(b) When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his subcontractor, and persons employed by the subcontractor, are within the meaning of this section, employees of the original employer.

"(c) A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor and an employer within the meaning of this section."

The court has had occasion to consider the above provision in determining whether a contractor was an employer or an employee. There would appear to be considerable conflict in the decisions. We think, however, that the statements of the court in Grabe v. Industrial Comm., supra, and in Alexander v. Alexander, 51 Ariz. 269, 76 P.2d 223, are determinative of the situation here. In the former case it was said [38 Ariz. 322, 299 P. 1034]:

"Under section 1418 supra (56-928, ACA1939) if A procures B to do certain work for him which is a part of process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the nth degree are, for the purposes of the Compensation Act, employees of A, no matter what the terms or method of employment or compensation. It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple, and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other

matters are of importance only as they throw light on this question."

The facts in the Alexander case are very similar to those before us. In that case the owner of an asparagus farm entered into an agreement with one John Alexander for the use of a machine for the cutting and chopping of asparagus fern into short lengths preparatory to working it into the ground for a mulch. As here, the agreement was oral and the compensation paid was upon an acreage basis. We quote [51 Ariz. 269, 76 P.2d 224]:

"* * * No written agreement was ever made between John Alexander and respondent in regard to the terms and manner in which the machine was to be operated. The compensation paid was on an acreage basis, and not per diem, but this, of itself, is not decisive of the issue. The true test, as stated in the Grabe case, supra, is whether the alleged employer retains supervision or control of the manner of the work. The testimony of Brown on this point is not positive, and it would be of little value as a precedent in future cases for us to set it forth verbatim. Generally speaking, the reasonable conclusion therefrom may be summarized as follows: Brown watched the progress of the work to see whether it was turning out a satisfactory result, directed any alterations in its manner that he thought best, and had the right at any time he thought it was not being done in the proper manner to cause Alexander to cease the work and remove his machine from the premises. He exercised this power of direction frequently, without any objection or protest from Alexander. We think that this situation is that of employer and employee rather than one of an independent contractor."

It is our view that the work being performed by Trout was a part or process of the business of the petitioner, and that the evidence justified the commission in finding that it retained supervision and control of the operation. It is true that the testimony is conflicting and somewhat unsatisfactory. As in the Alexander case, the petitioner watched the progress of the work, gave directions as to the manner in which the baling should be done. The work was stopped from time to time. The commission, we think, had the right to infer from the testimony that the petitioner had the power at any time it believed Trout was not properly conducting the work to terminate the employment. As in the Alexander case, the commission was justified in holding that the relationship between petitioner and Trout was that of employer and employee rather than one of an independent contractor.

The answer to the second question requires a consideration of the laws pertaining to insurance coverage for workmen's compensation; the terms of the policy involved in this case and the intention of the petitioner and commission as derived from the written agreement and the facts and circumstances.

Section 56-920, A.C.A.1939, creates a fund "to be known as The State Compensation Fund, for the purpose of insuring employers against liability for compensation, and of assuring to the persons entitled thereto the compensation herein provided." This fund consists of all premiums and penalties received, the property and securities acquired through the use of money belonging to the fund, together with interest earned thereon.

Section 56-921, provides:

"The commission may, in its name, make contracts of insurance to include and cover the entire underlying liability of employers insured in the state compensation fund so that such employers may be fully protected, not only for all compensation claims, but for all liability claims whatsoever by employees or their dependents or heirs, including the cost of defense of any action. * * *"

In section 56-922, it is provided: "Every employer insuring in the state compensation fund shall receive from the commission a contract or policy of insurance in a form approved by the commission. The premium thereon shall be paid by the employer to the commission at such times as may be prescribed. * * *."

Under the terms of section 56-923, the compensation and accident benefit funds "shall be neither more nor less than self-supporting." In this section, the commission is allowed for the purpose of fixing rates to divide employments into classifica-

tions and to keep separate accounts "of the amounts collected and expended in each class for determining rates, * * *."

Under section 56-925, for the purpose of determining the amount to be paid by any employer, premiums are based upon estimates for six months' period and provision is made for refunds to the insured and for payments to the commission for additional premiums.

Section 56-929 lists the employees who are entitled to benefits under the compensation act.

In section 56-930, " 'Award' shall mean the finding or decision of the commission of the amount of compensation or benefit due to an injured or the dependents of a deceased employee."

Under section 56-931, employees are entitled to receive compensation as provided in the act.

Under section 56-932, "Employers, * * * shall secure compensation to their employees in one of the following ways: (1) By insuring and keeping insured the payment of such compensation with the state compensation fund; * * *"

Section 56-933 provides:

"Every policy of insurance for compensation, issued by the commission * * * shall cover the entire liability of the employer to his employees covered by the policy or contract, * * *. * * * the insurance carrier shall be bound by and subject to the orders, findings, decisions

and awards rendered against the employer for the payment of compensation, * *."

Under section 56-936, employees covered by state fund "shall be paid such compensation out of the state compensation fund * * *."

Section 56-937 provides for semi-annual payment of premiums to be determined and fixed by the commission for the employment or occupation of the employer. If the employer fails to pay to the state compensation fund, or its insurance carrier if other than the commission, premiums when same become due, actions may be instituted to recover the premiums, with reasonable attorneys' fees to be fixed by the court.

From the foregoing it will be seen that the provisions for insurance by the commission are elastic, and are designed to fully protect all employees of employers who are covered under the state compensation fund. While it is said in section 56-921 that "the commission may * * * make contracts of insurance * * *" this does not mean that when it does enter into a contract of insurance it may contract that certain employees, who under the law are entitled to be compensated, may be excluded from the operation of the policy. The various provisions of the act must be taken into consideration in giving effect to this section. Kennecott Copper Corp. v. Industrial Comm., 62 Ariz. 516, 158 P.2d 887. This however, is not to say that a single policy must cover all the different occupations or business enterprises of the employer. It does mean that the policy must cover all employees of a certain occupation or separate business of the employer. Clare v. Malia, 52 Ariz. 552, 84 P.2d 456; In re Cox, 225 Mass. 220, 114 N.E. 281; Phalen's Case, 271 Mass. 371, 171 N.E. 438; Frint Motor Co. v. General Accident F. & L. Assur. Corp., 173 Wis. 109, 180 N.W. 121; Empey et al. v. Industrial Comm. of Utah, 91 Utah 234, 63 P.2d 630, 108 A.L.R. 801.

It would appear to be obvious that since the law provides for a state compensation fund, designates the employees who are entitled to be secured thereby, and makes careful provision for the issuance of insurance policies with inclusive liability, there was no intention that the beneficial features of the act could largely be defeated by excluding from the policy employees who were entitled to protection. It follows that the policy issued by the commission must be as inclusive as the act itself, and when it insures an employer it must cover all the employees of the particular business or occupation. There cannot be divided or partial coverage. It is true we stated in Employer's Liability Assur. Corp. v. Frost, 48 Ariz. 402, 62 P.2d 320, 323, 107 A.L.R. 1413, that the provision of sec. 56-921 "is permissive and not mandatory." But it clearly appears from the opinion that the ruling was that the section is "permissive" only to the extent that the commission may or may not undertake to insure a particular employer or assume all the general risks mentioned in that section. When it does

issue a policy, it is bound by the provisions of sec. 56-932, which makes no exception as to employees to be insured, and clearly means the employees listed in sec. 56-929. The liability of the policy is fixed by sec. 56-933, providing that it "shall cover the entire liability of the employer to his employees covered by the policy or contract," and, as we have pointed out, all employees in the particular business or occupation of the employer who under the law are entitled to .compensation, must be covered by the policy.

The policy involved here, by its terms covered the entire liability of the employer to its employees or their dependents under the workmen's compensation act. It thus excludes from coverage those not by law entitled to such security, as agricultural workers not employed in the use of machinery, domestic servants, independent contractors and their employees. These exclusions also appear in the printed terms of the contract. In addition, under the provision relating to persons engaged as independent contractors, the specific provision was inserted pertaining to independent plowing, etc.

■ The commission takes the position that the inclusion of the words just referred to, and which we have previously quoted, evidences the intent of the parties that those engaged in the character of work mentioned were not within the terms of the policy, and that because the employer at all times considered that Trout was an independent contractor and paid no premiums on the compensation of Trout and his employees, including the applicant, the employer is estopped to claim that it is covered by the policy. Inasmuch as the policy was never intended to cover independent contractors, the insertion of the special provision would add nothing to its terms other than to clearly disclose the general intention that those engaged in independent contract work were not included under the terms of the agreement. On the other hand, this insertion and the policy as a whole discloses the intent of the parties that all employees by law entitled to benefits were covered by the policy.

■ It appears that the employer acted in good faith and under the belief that Trout was an independent contractor. It was for these reasons that it failed to pay premiums. When the commission, the proper tribunal to decide, found that Trout was not an independent contractor, the employer offered to pay the premiums. We think it had this right. Estoppel operates to prohibit a party from changing his position only when the party asserting estoppel has been led to change his position for the worse. Our opinion in City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 1180, 102 A.L.R. 837, succinctly states the rule: "The essential elements of estoppel are that plaintiff, with knowledge of the facts, must have asserted a particular right inconsistent with that asserted in the instant action, *to the prejudice of another who has relied*

*upon his first conduct."* The commission, as insurance carrier, is not prejudiced. It was bound by the terms of the policy to assume liability for injury or death of those who · are actually employees of the petitioner. The fact that the petitioner employer failed to pay premiums on compensation of Trout and his employees does not legally prejudice the commission. It has the undoubted right to collect all unpaid premiums. Sections 56-925 and 56-937. The law provides severe penalties for an employer who misrepresents to the commission the amount of the payroll upon which the premium is paid. Sec. 56-977.

■ Mere failure to include wages of employees who are covered by the policy, whether inadvertently or under the belief that such employees are independent contractors, will not void the policy between the insurer and the assured. It is not always possible to determine the total number of employees. Thus new employees *upon whose wages no premiums have been* paid are protected by these policies. Clare v. Malia, supra.

■ It must be borne in mind that this is a proceeding instituted on behalf of the applicant Webb for compensation. The evidence discloses that the applicant was in the employ of an employer who was insured by the commission as insurance carrier under a general coverage policy, that is to say, a policy that covered all employees of the petitioner who were entitled to compensation under the law. It seems to be the settled law that stipulations and warranties in workmen's insurance policies by the employer do not affect the right of the employees and their beneficiaries to recover under such policies compensation provided by law. They affect only rights of the employer and insurer inter sese. . The insurer may have the right to recover over against the employer any damages sustained by a breach of the policy, but this in no way affects the rights of the employee. His rights "cannot be narrowed by contract between the employer and insurer." 71 C.J. 913, sec. 646; 71 C.J. 915, sec. 651, Workmen's Compensation ' Acts; In re Cox, supra; In re Gould, 215 Mass. 480, 102 N.E. 693, Ann.Cas.1914B, 372; Phalen's Case, supra; Janes Contracting Co. v. Home Life Acc. Co., Tex.Com.App., 260 S.W. 839, affirming Janes Contracting Co., supra, Tex.Civ.App., 245 S.W. 1004; Sheek v. Texas Co:, Tex.Civ.App., 286 S. W. 336; Texas Employers' Ins. Ass'n v. Price, Tex.Civ.App., 300 S.W. 667. Nor does the failure of the employer to pay the premiums affect his rights. Texas Employers' Ins. Ass'n v. Price, supra.

■ The commission is bound by the terms of the compensation law and can only enter such awards as are therein provided. When the evidence discloses, as in this case, that an employee is covered by insurance in the state compensation fund, he being an employee of the insured employer in that fund, an award should be entered under the provisions of sec. 56-936,

supra. This section specifically provides under these circumstances that the employee shall be paid his compensation out of the state compensation fund. There is no claim made that the award does not properly fix the amount of compensation due the applicant. The finding of the commission that the applicant was an employee was, as we have seen, justified by the evidence. The commission erred in requiring the employer to pay the award rather than to direct the payment out of the state compensation fund.

The award is set aside.

STANFORD, C. J., and LA PRADE, J., concur.