251 P.2d 638

**STANLEY v. INDUSTRIAL COMMISSION.**

No. 5624.

Supreme Court of Arizona.

Dec. 22, 1952.

Robert A. May and Ray Fisher Harris, of Tucson, for petitioner.

Robert E. Yount, H. S. McCluskey, and Robert W. Pickrell, of Phoenix, for respondent.

UDALL, Chief Justice.

This is an appeal by certiorari brought by Pearl J. Stanley, petitioner, to review an award of the Industrial Commission of Arizona dated June 4, 1952, denying her further compensation or accident benefits.

This matter is before us for the second time. The commission originally denied compensation because in its opinion petitioner did not sustain an injury by accident arising out of and in the course of her employment. We set aside this award in the case of Stanley v. Moan, 71 Ariz. 359, 227 P.2d 389, to which reference is made for a recitation of the facts. On receiving the mandate of this court the commission promptly assumed jurisdiction and petitioner, by virtue of subsequent awards, received accident benefits and the sum of $2,424.08 in compensation for total temporary disability for the period August 18, 1949 through May 7, 1951. Further compensation was denied petitioner when the results of an examination by a medical advisory

board showed that there was no residual disability resulting from the accident.

■ In reviewing this award and finding we are guided by the well-settled rule that the findings of the commission are to be given the same consideration as those of a jury or trial judge. If there is reasonable evidence to support the award, or the facts are such that reasonable men might draw either of two inferences therefrom, then the findings of the commission must be affirmed. West Chandler Farms Co. v. Industrial Commission, 64 Ariz. 383, 173 P.2d 84; Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488.

■ The evidence upon which the commission's finding is based must be competent. In the case of Tashner v. Industrial Commission, 62 Ariz. 333, 157 P.2d 608, 610, wherein a medical advisory board reached a conclusion not supported by the medical history and findings, and which conclusion was the basis of the commission's decision, we stated:

"* * * The commission should, and must, give due weight and consideration to the opinion of the medical board, but it is not bound by its conclusions, particularly where the conclusions are wholly unsupported by the actual facts, or, as here, contrary to the medical history and findings. It is the medical findings rather than the conclusion which constitute evidence. Obviously, the conclusion or opinion which is counter to the actual facts or findings, and which on the face of the record is illogical and without support, cannot be treated as reasonable evidence."

In the present case the petitioner was examined, in Phoenix, nearly 21 months after the accident and at the request of the commission, by a board of the following distinguished members of the medical profession, viz.: Drs. J. R. Schwartzmann, J. P. McNally, R. S. Haines, Richard E. H. Duisberg, and C. H. Gans. This board made physical, orthopedic, neurological, and psychiatric examination and had access to and reviewed the reports of other doctors, including gynecologists, who had treated or examined petitioner. The board also examined a series of X-rays, taken at different times, and the reports covering them. Separate findings under each of the listed categories were made with the board's conclusion as follows:

"This board fails to find any evidence of back, leg or other physical disability which could be attributed to the injury in question. We recognize that this patient is obese and hypertensive and at menopausal age, but these conditions are not an industrial responsibility and were not aggravated by the injury of 8–15–49."

If the board's report, including this conclusion, may fairly be classed as reasonable evidence under the rule of the Tashner

case, quoted supra, then there is a conflict to be determined by the commission, for we assume for purposes of this review that petitioner's evidence, which consisted largely of statements made by Drs. Breck and Basom of El Paso, Texas, in regard to her physical disability, was sufficient to support a contrary finding.

Petitioner, whose injury and complaints were primarily orthopedic in nature, attacks the conclusion of the board (and therefore the award of the commission) as being contrary to and unsupported by the medical findings of the orthopedic and neurological examinations. The contention is that the conclusion reached is not predicated upon reasonable evidence for it is based, in part, on a false premise, i.e., she consciously motivated her behavior. In this attack, petitioner relies on two well-recognized rules of law for support:

(1) The value of an expert's opinion is dependent upon and is no stronger than the premises upon which it is predicated, and such an expert opinion has no probative force if any one of these premises is shown to be false.

(2) A mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend towards that conclusion any more than toward a contrary one has no evidentiary value.

Applying the two rules, petitioner urges that the premise of the examiners—that petitioner's behavior was consciously motivated—is false, or at least of no evidential value, for it is a conclusion from basic facts that do not tend toward the adopted conclusion any more than to a contrary one. If this be true it would follow that the ultimate conclusion of the board and therefore the award is a mere guess or conjecture of no probative force.

We do not believe it would be profitable to include the text of the board's orthopedic, neurological, and psychiatric reports in this opinion. The findings favorable to the petitioner may be summarized as follows: (a) She had essentially a normal range of motion in all of her joints except that it was impossible to put her neck through a normal range of motion either actively or passively; (b) straight leg-raising was carried out to only about 45 degrees bilaterally; (c) her hips were flexible to only about 90 degrees; (d) she resisted many active movements indicating pain, sometimes severe; (e) there was no finding of any organic central nervous disturbance but, however, a wealth of functional disturbance with the petitioner resisting and protesting inability to carry out the tests; (f) the X-rays showed minor hypertrophic (arthritic) changes of the dorsal and lumbar spine which had not changed appreciably since the accident and which were considered within the normal limits for a person of petitioner's age, but no signs of fracture, recent or old, or other abnormalities.

The psychiatric examination was summarized as follows:

"* * * the general impression given by this patient today is of an obese, hypertensive woman of menopausal age who seemed to be dramatizing and exaggerating her symptoms and complaints in every possible manner. It is our opinion that the patient's behavior was consciously motivated."

This opinion is further indicated by the language used in the report of the orthopedic examiners:

"This patient was very difficult to examine since she was tense and weeping during most of the examination and claimed to be unable to carry out various active movements. * * *"

and the report of the neurological examiners:

"Throughout the examination, the patient indulged in various histrionics and protested inability to carry out the tests requiring constant urging and reassurance. * * *"

Doctor Schwartzmann, one of the orthopedic members of the board, was asked on cross-examination:

"Q. Now, isn't it just as possible, doctor, that this inability or apparent physical or muscular reluctance of the patient to perform or carry out certain tests could just as well be due to fear or traumatic neurosis or sheer inability

to perform them as (that) she was consciously perjuring herself by her actions?"

to which the doctor answered "I think that's possible, yes, sir." Therefore the very heart of the question before us is whether this holding of motivated behavior by the board upon which the report was partially based was itself only a conclusion drawn from basic facts that do not tend toward the adopted conclusion anymore than to a contrary one, or is this premise actually part of the medical findings of the board and therefore evidence competent for the commission to have based its award upon?

■ The key to understanding its true nature is the answers on cross-examination of Dr. Schwartzmann. In accord with the last-quoted question and answer, supra, the doctor was asked and made answer as follows:

"Q. * * * nervous tension could have caused some of those reactions, could it not? A. It could have.

"Q. Pain causes resistance to muscular tortion, does it not? A. Yes, in an organized and fairly constant pattern for an area in pain.

"Q. The fact that under the orthopedic examination its (it is) stated that it was impossible to put her neck through the normal range of motion either actively or passively— A. I can qualify that some, having been

there. Again, in this particular thing, we first met with resistance and then met with hyper-reactive attitudes towards attempt to move the neck. In other words, the individual asked to rotate her head to the right or left would go through a series of motions and exercises that were far more exerting and putting far more stress on the neck than we were asking her to do, I mean, in protesting she was unable to do it.

\* \* \* \* \* \*

"Q. You use the words 'she would not'. Was there any findings it was a question of would not rather than could not? A. There were findings that she would not rather than could not because I can give you several instances, if you want. One of them, we asked the patient to bend to the side and to bend forward. She was unable to do any of this, she stated. Yet, in testing for reflexes, she almost fell off the table jumping back into me. I was standing behind her. And she leaned approximately 50 degrees off the table enough to let an individual fall unless they were using their back muscles quite well. \* \* \*"

Two statements of Dr. Schwartzmann bear on the relation of the psychiatric findings to the board's conclusion. The doctor's oral composition is in part awkward but the meaning clear:

"\* \* \* The neuropsychiatrist was able to demonstrate a lack of psychiatric stability indicating to us that positive evidence of functional exaggeration and overlay on a positive basis, not a limited basis, is more objective than our objective symptoms that are objective findings.

\* \* \* \* \* \*

"Q. \* \* \* are you saying she is a malingerer? A. I am qualified only as a orthopedist. I can read the psychiatrist's summary of the psychiatric examination. 'It is our opinion that the patient's behavior was consciously motivated.'

\* \* \* \* \* \*

"\* \* \* Our board's conclusion is based on authoritative decisions of men who are qualified in given fields. In other words, I am still not indirectly qualifying as a psychiatrist."

From our review of the report and supplementing testimony we believe it established that while the results of the orthopedic and neurological examinations chronicle some lack of functional ability which could result from different sources, the psychiatric examination established, by objective evidence recognized in that science, that the cause was conscious motivation. Each of the examinations in these specialized fields, being the basis for the conclusion, complement one another. We cannot say that the conclusion of the medical board was unsupported by the facts, or contrary to the

medical history and findings. We hold, therefore, that the commission's award was based on reasonable evidence.

Award affirmed.

STANFORD, PHELPS, DE CONCINI, and LAPRADE, JJ., concurring.