321 P.2d 1037

**Alfred KNIGHT, Appellant,**

**v.**

**J. G. RICE, Appellee.**

No. 6053.

Supreme Court of Arizona.

Feb. 26, 1958.

Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for appellant.

Brice I. Bishop and Donald R. Kunz, Phoenix, for appellee.

JOHNSON, Justice.

This is an action instituted by Alfred Knight against J. G. Rice to recover an amount claimed to be due as the result of a joint venture between the two. The trial court, after making findings of fact and conclusions of law, rendered judgment in favor of defendant Rice, and this appeal follows.

On August 15, 1939, the parties entered into a written agreement whereby they agreed to purchase a tract of land for $40,000, payable $5000 down and $35,000 on or before October 1, 1939. The property was to be subdivided for resale and the proceeds from such sales after commissions and expenses were to be paid to the Phoenix Title and Trust Company, as escrow agent, and applied to the payment of the $35,000. The agreement also provided that after Knight had been repaid for certain advances any further proceeds from sales should be equally divided, and when the full purchase price was paid the property would be conveyed to the Phoenix Title and Trust Company, as trustee for the parties under such terms as the parties agreed.

On the 22nd day of August, 1939, a trust agreement was executed by the parties and the Phoenix Title & Trust Company became trustee. So far as material herein the proceeds from sales were to pass through the trustee, and after the payment of certain expenses the balance was to be paid to the parties as their respective interests appeared upon their written authorization signed by both.

Thereafter, on July 3, 1942, plaintiff and defendant delivered written instructions to the trustee, authorizing payment to Knight in the sum of $7500. Following that instruction to the trustee all money received by the trustee was, upon the written authorization of both parties, distributed equally until May, 1949, when by written instrument the trust was closed.

That instrument recited that the purpose of the trust had been fulfilled, ratified all actions of the trustee, admitted satisfaction in full of all claims of the parties in the trust, and released the trustee.

The court appointed a special master to render an account from the books and

records. There is no dispute between the parties concerning the correctness of the figures as reflected in the report of the master. It shows that Knight did not receive from the trust the full amount of the advances he made on the original purchase price. It shows that if distribution had been made in accordance with the parties' written agreement when the venture was started Rice collected $8,587.03 which should have gone to Knight.

The evidence shows and the trial court found that the books and records of the Knight-Rice venture were maintained in the office of the plaintiff, that entries in the books were made by his secretary, and the defendant Rice testified that he never saw the books. Knight's secretary testified that in April, 1945, she was familiar enough with her employer's business to know that the capital accounts of the parties should have been equal and that they were not, and that she so advised Knight of such discrepancy. Knight, however, testified that when he and Rice signed the authorization of July 3, 1942, for the trustee to pay him the $7,500, he supposed he had been paid in full for the advances made.

The evidence is undisputed that Knight knew as early as April, 1945, that there was a discrepancy in the accounting and that something was wrong. In spite of this knowledge he continued to sign written authorizations to the trustee directing equal payments to himself and the defendant.

There was a corporation, Eureka Investment Company, which the parties owned in equal shares. Rice testified that the money he received from the trust went to Eureka Investment Company, and that between $25,000 and $35,000 was put in that company. He later sold his interest and he said because it was so long ago he was uncertain about the true situation concerning the investment in the Eureka Investment Company; they did not lose money but he did not think they made a great deal of money.

It also appears, and the court found from the evidence, that the receipts from the trust were reported to the federal internal revenue office in a partnership return and in the individual returns from 1940 through 1949.

On the basis of the foregoing the trial court ruled that the plaintiff was estopped to make further claims against the defendant. The correctness of this ruling is the problem presented.

Estoppel is an affirmative defense; the party relying thereon must plead the same and has the burden of showing by clear and satisfactory proof that all the elements are present, and the acts relied upon to create it must be absolute and unequivocal.

382

We held in City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 1180, 102 A.L.R. 837, that the principles governing estoppel are:

"* * * The essential elements of estoppel are that plaintiff, with knowledge of the facts, must have asserted a particular right inconsistent with that asserted in the instant action, to the prejudice of another who has relied upon his first conduct. * * *"

See also: Weaver v. Martori, 69 Ariz. 45, 208 P.2d 652. Estoppel operates to prohibit a party from changing his position only when the party asserting estoppel has been led to change his position for the worse. West Chandler Farms Co. v. Industrial Commission, 64 Ariz. 383, 173 P.2d 84. If any of the essential elements are lacking there is no estoppel.

In the present case all of these essential elements are not present. There is no evidence in the record that the defendant in any way changed his position to his prejudice. It is, of course, elementary that the defendant cannot claim the benefit of estoppel without clear and satisfactory proof that he changed his position to his detriment as a direct result of the conduct of the adverse party.

While it is true as contended by the defendant that the plaintiff continued to sign written authorizations to the trustee directing equal payments to the parties long after he was advised there was a discrepancy in the accounts, we fail to see how this conduct in any way adversely affected the defendant.

Finally, in order to invoke the doctrine of estoppel, it must be shown that the defendant while relying on the conduct of the plaintiff was induced to change his position to his detriment or disadvantage; that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect. 31 C.J.S. Estoppel, § 74. In this case the defendant has made no effort to show that he has been prejudiced or that he has in any way changed his position for the worse because of the facts presented. The evidence conclusively shows that the defendant received $8,587.03 which belonged to the plaintiff. Instead of the defendant changing his position for the worse or being prejudiced, it appears that he was unjustly enriched by the above amount and in equity and good conscience should not be permitted to retain same. Therefore, because of the absence of proof of this essential element, the remedy of estoppel is not available to defendant.

Judgment is reversed, and the trial court is ordered to enter judgment in favor of plaintiff for the sum of $8,587.03.

UDALL, C. J., and WINDES and PHELPS, JJ., concur.

STRUCKMEYER, J., having been the trial judge, did not participate in the determination of this appeal.