**Leroy ELLENBURG,
Plaintiff-Appellant/Cross-Appellee.**

v.

**BROCKWAY, INC. & Spellman Cunningham,
Defendants-Appellees/Cross-Appellants.**

CA. Nos. 84–5935, 84–5932.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1985.

Decided June 20, 1985.

Bruce Gelber, Julian B. Fenstein, Los Angeles, Cal., for plaintiff-appellant/cross-appellee.

Loyd P. Derby, Morgan, Lewis & Bockius, Los Angeles, Cal., for defendants-appellees/cross-appellants.

Before BROWNING and CHAMBERS, Circuit Judges, and MARQUEZ[1], District Judge.

MARQUEZ, District Judge:

Leroy Ellenburg, appellant and plaintiff below, brought this action against Brockway, Inc. (Brockway) and Spellman Cunningham (Cunningham), appellees and defendants below, pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* (1975). Ellenburg sought to recover early retirement benefits under Brockway's pension plan on grounds of breach of fiduciary duty, arbitrary and capricious conduct of fiduciaries, equitable estoppel, and on the state law claim of breach of the implied covenant of good faith and fair dealings toward a long-term employee.

Ellenburg's state law claim was dismissed pursuant to the trial court's Memorandum Decision and Order on Motion for Summary Judgment, ruling that ERISA preempted the state law claim. The remaining claims were tried to the court, and judgment was entered in favor of Brockway and Cunningham.

Ellenburg has appealed the trial court's Memorandum Decision and judgment, and Brockway and Cunningham have appealed the trial court's decision denying them an award of attorneys' fees.

*Standard of Review*

■ Eligibility decisions by trustees of an employee benefit plan covered by ERISA will not be overturned unless they are (1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law. *Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133, 1135 (9th Cir.1984); *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir.1976).

The district court's factual determinations are reversible by this court only if they are clearly erroneous. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Lojek v. Thomas,* 716 F.2d 675, 680 (9th Cir.1983).

FACTS

Ellenburg began working at the Pomona, California plant in 1948 for Continental Can Company (Continental). He continued his employment at that facility after the 1964 acquisition of the plant by Brockway. He worked at that plant continuously until his retirement on June 1, 1980.

1. The Honorable Alfredo C. Marquez, United States District Judge for the District of Arizona, sitting by designation.

Along with the purchase of the Pomona plant, Brockway also assumed pension obligations for Continental employees. To be eligible for early retirement benefits from Brockway, an employee had to (1) have had continuous unbroken service with Brockway from 1964 to the date of retirement, (2) have completed at least ten years of continuous service to both Continental and Brockway, and (3) have attained the age of 55. In order to receive benefits from Continental he had to receive a pension with a qualified pension plan established by Brockway. The portion of benefits Continental would pay an employee was to be "carved out" of the total benefit otherwise payable by Brockway.

Ellenburg submitted "Personal Information Requested" forms, dated June 27, 1979, to Cunningham, Director of Personnel at the Pomona plant, indicating his desire for early retirement and receipt of benefits. On these forms, and later forms filed in connection with his application for early retirement benefits, Ellenburg listed his date of birth as December 26, 1923. Prior to the "Personal Information Requested" forms, all records and documents filed by Ellenburg with Continental and Brockway contained birth dates of December 26, 1926.

Ellenburg's request for early retirement benefits was forwarded to the office of Mr. Richard Lewis, Manager of Employee Benefits. A computer print-out of retirement benefit calculations for Ellenburg, with a birth date of December 26, 1926 was generated and returned to Cunningham with a note indicating Ellenburg was not old enough to retire. When Cunningham informed Ellenburg of the ineligibility, Ellenburg disclosed his recently acquired Delayed Birth Certificate indicating a birth date of December 26, 1923. A copy of the Delayed Birth Certificate was forwarded to Mr. Lewis' office and also to Continental. At this time no Brockway personnel questioned the validity of the Delayed Birth Certificate.

Ellenburg, with the assistance of his sister, obtained the Delayed Birth Certificate from the State of Georgia by having a notary public, who was a friend of the family, certify that she had examined a family bible and a life insurance policy containing the age of Ellenburg. The State of Georgia issued the Delayed Birth Certificate in January 1979, based solely on the certification of the notary public. Ellenburg took disability leave from March 4, 1980 until May 9, 1980. From May 9, 1980 until June 1, 1980, Ellenburg took vacation time. He retired on June 1, 1980.

Due to a rumor among employees that Ellenburg had provided an incorrect birth date in his application for early retirement benefits, Mr. Lewis telephoned the school district and life insurance company whose records supported the Delayed Birth Certificate. He was advised that the school district's records indicated the year of birth as 1927, and not 1923 as claimed on the Delayed Birth Certificate. He was also advised that the records of the life insurance company, the application for the insurance policy, reflected Ellenburg's year of birth to be 1926, and not 1923 as claimed in the Delayed Birth Certificate.

On September 16, 1980, Mr. Lewis wrote Ellenburg informing him that the 1923 year of birth might be incorrect, advising him that payment of benefits was being suspended until the discrepancy in birth dates was resolved, and requesting the following information: (1) a copy of the insurance policy, (2) the name and address of the hospital in which he was born, and (3) a copy of his military discharge papers. Mr. Lewis wrote Ellenburg on October 7, 22, and 31, 1980 again requesting the above information.

Ellenburg claims that the insurance policy, the family bible, and his father, all of which he claimed he relied on in obtaining the Delayed Birth Certificate, have disappeared.

In February 1981, Mr. Lewis received copies of the school records and the application for the insurance policy, both of which supported the birth date of December 26, 1926. Based upon this information,

Brockway decided to deny early retirement benefits to Ellenburg.

In February 1983, Brockway received from the Bureau of Vital Statistics in Putnam County, Georgia, a certified copy of Ellenburg's birth certificate with the year of birth listed as 1926. Ellenburg's name is misspelled on the birth certificate, but his mother and father are correctly identified .

## DISCUSSION

### Preemption

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. It sets minimum uniform standards for employee benefit plans and provides for uniform remedies in the enforcement of the plans. See *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981).

ERISA explicitly preempts state laws to the extent that they relate to employee benefits not exempt from federal regulation. 29 U.S.C. § 1144 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

(c) For purposes of this section: (1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.

■ The ERISA preemptive provision is to be broadly construed. *Alessi,* 451 U.S. at 522–25, 101 S.Ct. at 1905–07. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct.

at 2900. Thus ERISA preempts state laws which either directly or indirectly relate to an employee benefit plan. *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215 (8th Cir.1981), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981).

The Ninth Circuit has held that ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356–57 (9th Cir.1984). Those state laws authorizing causes of action for the improper handling of claims under benefit plans have been held to be directly connected with the employee benefit plan and thus preempted by ERISA. *Russell v. Massachusetts Mut. Life Ins. Co.,* 722 F.2d 482, 487–88 (9th Cir.1983).

■ Ellenburg's state claim for breach of implied covenant of good faith and fair dealing is brought against Brockway and Cunningham in their capacity as employer, rather than fiduciaries, and seemingly concerns the employment relationship, rather than the employee benefit plan. However, this claim originates from the handling and disposition of Ellenburg's claim for early retirement benefits and is therefore directly connected with the employee benefit plan and preempted by ERISA.

### Adequacy of Notice

A claim for retirement benefits is filed "when a written or oral communication is made by the claimant ... which is reasonably calculated to bring the claim to the attention of ... any officer of the employer." 29 C.F.R. § 2560.503–1(d) (1984). Receipt of the communication is sufficient to satisfy the requirement of the claim being brought to the attention of the officer of the employer.

The district court did not make a finding of fact regarding the date Ellenburg filed his claim for early retirement benefits, but the record shows that on June 27, 1979, Ellenburg filed with Cunningham "Personal Information Requested" forms which in-

dicated Ellenburg's desire for early retirement and receipt of benefits.

Pursuant to 29 C.F.R. § 2560.503–1(e), Brockway was required to furnish Ellenburg with written notice of the denial of his claim within 90 days after receipt of the claim, unless special circumstances required an extension of time for processing the claim. In cases of special circumstances, written notice of the extension must be furnished within the 90 day period, and the extension may not exceed 90 days from the end of the initial 90 day period.

Ellenburg was entitled to notice of an extension or notice of denial of his claim in September 1979. Even if special circumstances existed, Ellenburg was entitled to notice of the denial in December 1979.

Ellenburg received notice in September 1980 that his eligibility was subject to question and his benefits were being suspended pending resolution of the discrepancy of his date of birth. He was notified in March 1981 of the denial of his claim. Even under the extension provision, notice to Ellenburg was 9 months late. The record shows that in all notices Ellenburg was adequately advised of the reason for nonpayment of benefits.

The district court did not make a finding of fact regarding Brockway's compliance with the timely notice requirement, but the record shows that Brockway did not comply with the procedures required by 29 C.F.R. § 2560.503–1(e). The procedural error is viewed as an error on a question of law.

Procedural defects do not necessarily require substantive remedies. *Blau,* 748 F.2d at 1353; *Wolfe v. J.C. Penney Co. Inc.,* 710 F.2d 388, 393 (7th Cir.1983). A substantive remedy would be appropriate only if the procedural defects caused a substantive violation or themselves worked a substantive harm. *Blau,* 748 F.2d at 1354; *Grossmuller v. International Union, U.A.W.,* 511 F.Supp. 709, 711 (E.D.Pa. 1981).

■ With the district court's findings of fact regarding Ellenburg's ineligibility for early retirement benefits and his bad faith in applying for such benefits, Ellenburg is not entitled to a substantive remedy and no remand is necessary as it would be a useless formality.

*Arbitrary and Capricious*

■ Estoppel principles have been applied to pension plans. *See Lavin v. Marsh,* 644 F.2d 1378, 1382–83 (9th Cir. 1981); *Rosen v. Hotel & Restaurant Employees, etc.,* 637 F.2d 592, 597–98 (3rd Cir.1981). The doctrine of estoppel is available if the following elements are present: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Lavin,* 644 F.2d at 1382; 1 S. Williston, Williston on Contracts § 139 (3d ed. 1957).

■ The following findings of fact by the district court preclude application of the estoppel doctrine: (1) Brockway and Cunningham did not represent to Ellenburg that his application for benefits had been approved or that he was eligible to receive such benefits; (2) Ellenburg could not and did not reasonable rely on any representations made by Brockway and Cunningham regarding his application and eligibility for benefits; (3) Ellenburg always believed he was born in 1926, which would render him ineligible for early retirement. A review of the record shows that the district court's findings are not clearly erroneous.

Brockway's and Cunningham's consideration of evidence of Ellenburg's age, obtained after Ellenburg retired, in determining eligibility was not arbitrary and capricious. The discrepancy in Ellenburg's date of birth was apparent prior to his retirement, and such discrepancy was sufficient to cause Brockway and Cunningham suspicion as to Ellenburg's eligibility. As fiduciaries, Brockway and Cunningham were under a duty to protect the pension plan and trust assets by assuring that only eligible

employees received benefits. The decision to resolve the discrepancy in Ellenburg's date of birth prior to payment of benefits was reasonable and prudent, rather than arbitrary and capricious.

*Unclean Hands*

The unclean hands doctrine derives from the equitable maxim that "he who comes into equity must come with clean hands." This maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945).

In applying the doctrine, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir.1963). Thus, equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue. *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387, 64 S.Ct. 622, 624, 88 L.Ed. 814 (1944); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933).

The district court's findings of fact regarding Ellenburg's bad faith with respect to his application for early retirement are not clearly erroneous. The record shows that Ellenburg's true date of birth was known to him to be 1926. His submission to Brockway and Cunningham of documents he knew to be in conflict with other records of his birth date, and his attempt to establish an earlier birth date for purposes of early retirement benefits constituted bad faith. Ellenburg acted in bad faith with respect to his early retirement benefits, the right which he now asserts against Brockway and Cunningham. Thus, Ellenburg dirtied his hands in acquiring the right he now asserts, and equity will bar him from equitable relief.

*Attorneys' Fees*

The award of attorneys' fees to a prevailing party in a case brought under ERISA is discretionary with the trial court. 29 U.S.C. § 1132(g).

The district court denied an award of attorneys' fees without stating the reasons or considerations for its decision. Since the statute commits the allowance of fees to the district court's discretion, its determination should be reversed only for abuse of discretion. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980).

An abuse of discretion is found only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors. *Id.*

Because the trial court rendered its decision without discussion it is not possible to apply the proper standard of review. The question of attorneys' fees is remanded to the district court to allow it to state the reasons for its decision.

On remand, the district court should consider the guidelines set forth by the Ninth Circuit in *Hummell, supra.*

CONCLUSION

Ellenburg's state law claim arises out of and is directly connected to the Brockway employee benefit plan. The district court was correct in ruling the claim preempted by ERISA.

Brockway failed to give timely notice to Ellenburg of the denial of benefits. The procedural violation constitutes a breach of fiduciary duties. However, the procedural defects are not such as to require a substantive remedy. Nor would remand be useful in view of Ellenburg's ineligibility.

Brockway was not arbitrary and capricious in its decision denying Ellenburg early retirement benefits. The district court's findings as to the absence of the requisite elements for estoppel are not clearly erroneous.

Ellenburg proceeded in bad faith in applying for early retirement benefits when he knew he was not age eligible. The district court's findings of Ellenburg's knowledge of his correct date of birth are not clearly erroneous.

The decision denying attorneys' fees cannot be reviewed by this court due to the absence of the district court's statement of reasons for the denial. This matter is remanded to the district court to allow it to state the reasons for its decision.

The judgment of the district court is affirmed and the matter is remanded for a statement of the district court's reasons for denying attorneys' fees.