880 P.2d 694

**PAUL R. PETERSON CONSTRUCTION, INC., and Paul R. Peterson, Plaintiffs–Appellees, Cross–Appellants,**

v.

**ARIZONA STATE CARPENTERS HEALTH AND WELFARE TRUST FUND, Defendant–Appellant, Cross–Appellee.**

No. 1 CA–CV 91–0203.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 10, 1994.

Reconsideration Denied March 30, 1994.

Review Denied Sept. 20, 1994.

David F. Gomez, P.C. by David F. Gomez, Michael J. Petitti, Jr. and James Burr Shields II, Phoenix, for plaintiffs-appellees, cross-appellants.

Lee, Stegall & Katz, P.C. by Todd A. Schultz, Phoenix, for defendant-appellant, cross-appellee.

## OPINION

JACOBSON, Presiding Judge.

This appeal involves an examination of the relationship between federal and state law regarding the viability of an equitable estoppel claim asserted against a union trust fund employee health and welfare benefits plan that is subject to the Employment Retirement Income Security Act (ERISA), under 29 U.S.C. § 1002(1). As a preliminary matter, we must determine whether law of the case established by a prior final appellate decision in this matter applies. The issues before us include the following:

1. May defendant assert in this appeal that an equitable estoppel claim against a union trust fund is barred as a matter of federal ERISA law when the prior final state appellate decision considered and rejected that argument?

2. Did the trial court's jury instruction on the elements of equitable estoppel, based on Arizona case law, constitute reversible error?

3. Was the evidence sufficient to establish the elements of equitable estoppel?

4. Did the trial court err in bifurcating the liability and damages issues?

Additionally, the cross-appeal raises the following issue:

5. Was plaintiff entitled to prejudgment interest on his equitable estoppel claim?

### FACTS AND PROCEDURAL HISTORY

The following facts are taken from the prior appellate decision in this case, *Paul R. Peterson Constr., Inc. v. Arizona State Carpenters Health & Welfare Trust Fund*, 2 CA–CV 88–0085 (Ariz.App. mem. dec. Mar. 17, 1988), as well as from the trial record after remand from that appeal.

Plaintiff, Paul R. Peterson, a member of the Arizona State Carpenters' Union and a participant in its health and welfare benefits plan, incorporated his construction business in his own name in 1970, with himself as its sole shareholder, owner, and officer. His company was a signator to a Master Labor Agreement entered into with the union in 1977, which required the company to contrib-

ute payments for its union members to the union's health and welfare benefits plan (hereafter, "trust fund"). The construction company's collective bargaining agreement with the union expired in May 1982, and attempts to negotiate a renewal reached impasse in late 1982 or early 1983, thus terminating the parties' rights under the union contract. However, the trust fund contract provided that a member who was no longer working for a "participating employer" could continue to be eligible for coverage for a limited time based on accumulated credits in an "hour bank" that was determined by monthly reports by the member's employer; when the hour bank credits were exhausted, the member could continue eligibility for coverage on a "self-pay" basis for up to twelve months and thereafter convert to a private policy. However, a resolution of the trust fund trustees in January 1983 provided that no owner or officer of an employer could participate in the self-pay plan. There is no question Peterson was such an owner/officer. No notice of that resolution was provided to union members or their employers prior to the events giving rise to this litigation.

Beginning in January 1983, Peterson telephoned the trust fund benefits administrator on a monthly basis to ascertain his eligibility for medical benefits. He was informed that his hour bank credits provided coverage through June 1983, and that he could begin to self-pay for continued coverage in July 1983. On May 31, 1983, Peterson, as instructed, tendered a premium check of $96.00 for health coverage for July 1983, and on July 31, 1983, he tendered another check for $96.00 for August 1983. The trust fund accepted both checks and issued receipts.

On August 1, 1983, Peterson's wife was diagnosed with breast cancer, and a hospital called the trust fund administrator's office to verify health insurance coverage. By letter dated August 4, 1983, the trust fund's attorneys instructed the administrator to deny coverage; on August 16, 1983, the trust fund reimbursed Peterson for his August premium with a note stating, "According to the Fund rules, you are not eligible to self-pay since you are an owner/officer of Peterson Construction." Peterson requested review of the

denial of benefits, and the trust fund issued its final decision in March 1985 denying his benefits under the self-pay plan because of his status as an owner/officer of his company. The medical bills for Peterson's wife's treatment totalled more than $80,000 before her death in July 1985.

In February 1985, the trust fund and other plaintiffs filed suit against Peterson and his company, alleging that, as a signatory to the Master Labor Agreement, Peterson had failed to meet his obligation to pay all contributions due for his employees. Peterson filed an answer, counterclaim, and third party complaint, asserting an offset and that the trust fund had wrongfully denied benefits for his wife's illness. The counts in the counterclaim/third party complaint included intentional infliction of emotional distress, conspiracy to induce breach of contract, and violations of ERISA under 29 U.S.C. § 1002(4) and 29 U.S.C. § 1140.

The trust fund moved for dismissal of the counterclaim/third party complaint on the basis that Peterson was not an "employee" under ERISA, and that the tort claims were preempted as a matter of federal law. In response, Peterson argued that, even if he were not covered by the plan under its provisions, "the past dealings between the parties would estop [the trust fund] from asserting such a position," because he "individually relied upon the representations of the trustees, to his detriment, that he would be covered by the plan's insurance." In reply, the trust fund responded that the doctrine of estoppel could not be invoked because it would compel an illegal act under ERISA by requiring payment of benefits to a non-participating employer.

The trial court dismissed Peterson's counterclaim/third party complaint, finding that the conduct stated would not form a basis for an emotional distress claim; preemption of the claim by ERISA; and that, as a matter of law, Peterson was not entitled to benefits because of his status as owner, officer, and

employer. Peterson appealed, and Division Two of this court affirmed the trial court's conclusions that Peterson was an employer, ineligible for benefits under ERISA, and that the trust fund's decision to deny him benefits was not arbitrary or capricious. However, the court of appeals reversed and remanded on the basis that Peterson had stated a claim for equitable estoppel.

On remand, the trial court set Peterson's estoppel claim for a bench trial with an advisory jury to consider several liability issues.[1] The advisory jury returned the following responses to the court's interrogatories:

1. Did employees of the Trust Administrator's Office make telephonic representations to Peterson that he was entitled to Trust benefits? Yes

2. Did the Trust Fund employees, who accepted Peterson's May 31, 1983 self-pay premium check know that Peterson was an owner/officer when they accepted it? No

3. Did Peterson know at the time the alleged representation was made that, as an owner/employer, he was not entitled to Trust benefits? No

4. Did Peterson know that he was ineligible for self-pay because he was working for a non-signatory contractor? No

5. Did Peterson actually rely on words or conduct of the Trust employees? Yes

6. If these were telephonic representations, was it reasonable for Peterson to rely on them? Yes

7. Was it reasonable for Peterson to rely on the acceptance of his self-pay premium checks by employees at the Trust Fund office? Yes

8. Did Peterson act with unclean hands in his dealings with the Trust? No

9. Does the doctrine of equitable estoppel apply so as to allow the plaintiff benefits under the plan? Yes

The trial court ruled that Peterson was entitled to damages in the amount that his

---

1. In the interim, on January 22, 1987, the trust fund obtained a formal written judgment on its complaint against Paul R. Peterson Construction in the amount of $10,580.06 plus attorneys' fees and interest. That judgment incorporated the order "dismissing all other claims and counter-

claims with prejudice." Peterson apparently did not contest his liability for contributions in his appeal from the dismissal of his counterclaim/third party complaint, and that portion of the judgment became final.

benefits would have been if he were eligible for coverage, and ultimately awarded stipulated unreimbursed medical expenses in the amount of $66,345.67 plus attorneys' fees and costs. The court denied the trust fund's post-trial motions and also denied Peterson's motion for prejudgment interest. The trust fund appealed from the judgment and Peterson cross-appealed from the denial of his post-trial claim for prejudgment interest.

## LAW OF THE CASE

After trial, the trust fund filed a "Post–Trial Memorandum, Request for Judgment," arguing, for the first time, that "recent dispositive authority from the Ninth Circuit requires that Peterson's claim for estoppel be denied as a matter of law." The trust fund noted that, although the court of appeals had previously held that this estoppel claim was permitted under *Ellenburg v. Brockway*, 763 F.2d 1091 (9th Cir.1985), more recent ninth circuit case law specifically precluded estoppel claims against jointly administered ERISA trust funds as a matter of federal law. *See Davidian v. Southern California Meat Cutters Union*, 859 F.2d 134 (9th Cir. 1988); *Hansen v. Western Greyhound Retirement Plan*, 859 F.2d 779 (9th Cir.1988). Thus, the trust fund contended, despite the court of appeals' ruling allowing the estoppel claim in this case, "the Ninth Circuit has now put the issue to rest."

Peterson countered by contending that the Division Two decision became law of the case; thus, the trust fund was precluded from relitigating in the trial court the same issue that it had argued and lost on appeal. The trust fund replied by arguing that law of the case did not apply because two ninth circuit dispositive cases were published seven months after the mandate issued in the prior appeal, and constituted a change in the law. The trial court rejected this argument and entered judgment in Peterson's favor. On appeal, the trust fund reurges that law of the case does not control.

■ The doctrine of law of the case generally provides that "if an appellate court has ruled upon a legal question and remanded for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Employers Mut. Liability Ins. Co. v. Industrial Comm'n*, 115 Ariz. 439, 441, 565 P.2d 1300, 1302 (App.1977). This doctrine applies only if the facts and issues in the subsequent proceedings after remand are substantially the same as those on which the first decision was based. *Commercial Credit Co. v. Street*, 37 Ariz. 204, 207, 291 P. 1003, 1004 (1930). The effect of this principle is that an appellate court's final decision on a legal issue is binding in all subsequent proceedings in both the trial court and on appeal, regardless whether it is legally "right" or "wrong." *Vance v. Vance*, 124 Ariz. 1, 2, 601 P.2d 605, 606 (1979).

■ On this record, there is no question that the issue whether an equitable estoppel claim was barred by federal ERISA law was argued and decided against the trust fund in the prior appeal. In its appellate brief, the trust fund argued:

> The issue of whether estoppel applies in trust fund cases has been squarely addressed by the Ninth Circuit, and has been rejected. *Thurber v. Western Conf. of Teamsters Pns. Plan*, 542 F.2d 1106 (9th Cir.1976); *Aitken v. IP & GCU—Employer Retirement Fund*, 604 F.2d 1261 (9th Cir.1979). In *Thurber*, the court held that an employee's reliance on representations made by the trust fund administrator could not be utilized to estop the pension fund from denying the employee's claim for benefits. . . . *Thurber* is dispositive of the estoppel issue before this Court, and has been followed. . . .

In ruling against the trust fund on this issue, Division Two stated:

> Finally, appellants argue that the Fund is estopped from denying Peterson benefits because it knew owners were not eligible for the self-pay plan and not only failed to inform him of that, but actually represented to him that he was eligible, a representation on which he detrimentally relied. In *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986), the court held:

Even though ERISA preempts common law theories of contract law, *see Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356–57 (9th Cir.1984), *cert. denied*, [474] U.S. [865], 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), the principles of equitable estoppel apply to pension plans. *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985). In this circuit, estoppel is available against a nongovernmental party who has made a knowing false representation, or concealment of material fact, to a party ignorant of the true facts, with the intention that the other party should rely on the representation, and the other party actually and detrimentally relies on it. *See Jaa v. INS*, 779 F.2d 569, 571 (9th Cir.1986).

We believe that an estoppel claim has been stated. Accordingly, we reverse and remand for further proceedings.

Mem.Dec. at 5–6. The trust fund did not seek review of the court of appeals ruling on the applicability of the equitable estoppel claim under ERISA and that ruling became final when the mandate issued on May 18, 1988.

▉ The trust fund argues, however, that an exception to the law of the case doctrine arises when the controlling case law changes between the date of the prior appellate mandate and the date of the trial court's reconsideration of the issue. *See, e.g., Dancing Sunshines Lounge v. Industrial Comm'n*,

149 Ariz. 480, 483, 720 P.2d 81, 84 (1986) (law of the case does not apply where "there has been a change in the applicable law"); *Jordan v. Jordan*, 132 Ariz. 38, 43, 643 P.2d 1008, 1013 (1982) (law of the case doctrine inapplicable "where the policy of the law has been changed, by legislative enactment or decision of a higher court, while the case is still pending resolution"). The exception has been described as follows:

> [A] lower court is not bound to follow the mandate of an appellate court if the mandate is, in the interim, affected by an authority superior to the court issuing the mandate, such as by a higher appellate court, either state or federal....

*Jordan*, 132 Ariz. at 43, 643 P.2d at 1013, quoting *Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 178 (2d Cir.1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968).

In our opinion, the trust fund has failed to establish this exception. As Peterson correctly points out, the 1988 ninth circuit cases did not "change" federal law regarding estoppel claims applied to ERISA trust funds, but merely distinguished the *Ellenburg* and *Dockray* cases on their facts.[2] The same factual distinctions pointed out in the 1988 federal cases could have been argued by the trust fund in the prior appeal. Indeed, the trust fund took the position in the prior appeal that estoppel was not allowed as a matter of law on the basis of existing case

---

**2.** The *Davidian* court noted that the *Thurber* court had first announced in 1976 the general rule that "federal labor law did not allow recovery on the basis of estoppel in the face of contrary, written plan provisions." 859 F.2d at 135, citing *Thurber v. Western Conf. of Teamsters Pens. Plan*, 542 F.2d 1106 (9th Cir.1976). *Thurber* was reaffirmed in *Aitken v. IP & GCU–Employer Ret. Fund*, 604 F.2d 1261, 1266–69 (9th Cir.1979), in which the court "held the requirement that payments be made only in accordance with the written plan agreement dispositive of Aitken's estoppel claim." *Davidian*, 859 F.2d at 136, citing *Aitken*, 604 F.2d at 1267–68. The *Davidian* court stated:

> ERISA did not change the law.... In *Moore v. Provident Life & Acc. Ins. Co.*, 786 F.2d 922, 928 (9th Cir.1986), decided after ERISA, we applied a no-estoppel rule in a suit for employees benefits against a jointly-sponsored trust fund. There are no contrary holdings in this circuit.

*Davidian* relies upon *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985), and *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986). *Ellenburg* and *Dockray* are distinguishable. Neither case involved a suit against a trust fund. This distinction is critical, as our holding in *Aitken* made clear....

859 F.2d at 136. In *Hansen*, decided the same date as *Davidian*, the ninth circuit, citing *Davidian*, stated, "It is the law of this circuit, recently reaffirmed, that an employee benefit fund may not be required by estoppel to make payments not authorized by a written plan." 859 F.2d at 781.

The trust fund had cited both *Thurber* and *Aitken* in its brief in the prior appeal to argue the same legal principle that it now contends was a "change" in the law as the result of *Davidian* and *Hansen*.

law decided prior to 1988. We thus find no "change" in the law on the basis of these two ninth circuit cases decided after the mandate issued. Furthermore, as Peterson points out, a split in the federal circuits appears to exist on the issue whether a claim of equitable estoppel may be asserted against an ERISA trust fund.[3] We therefore conclude that no change in the controlling law on this issue exists to compel us to make an exception to the well established judicial policy to apply the law of the case doctrine to preclude the trust fund from relitigating this issue.[4] We thus do not address the issue on its merits.

### JURY INSTRUCTIONS ON EQUITABLE ESTOPPEL

In their joint pre-trial statement, the parties stipulated that "the following contested issues are material or applicable," based on *Ellenburg:*

> Whether the Trustees or their agents *knew or should have known* that Paul R. Peterson was an owner/officer prior to August 1, 1983?
>
> (1) Whether the trust fund *knew or should have known* that Peterson was an owner/officer;
>
> (2) Whether the trust fund intended that its conduct should be acted upon or did so act in such a way that Peterson had the right to believe it was so intended;
>
> (3) Whether Peterson was ignorant of the fact that he was ineligible for self-pay;
>
> (4) Whether Peterson relied on the representations of the Trust concerning his eligibility for insurance to his detriment.

(Emphasis added.) Additionally, in that portion of the joint pretrial statement entitled "contested issues of fact and law deemed material by defendant," the trust fund included the following:

> 10. Whether employees of the trust administrator's office telephonically represented to Paul R. Peterson on more than one occasion that he was entitled to participate in the self-pay plan;
>
> 11. If so, whether the employees at the administrator's office *knew or should have known* Peterson was an owner/officer when they told him he was eligible;
>
> 12. Whether the employees of the administrator's office *knew or should have known* that Paul R. Peterson was an owner/officer when they accepted his May 31, 1983 self-pay pension check.

(Emphasis added.)

Peterson requested the following jury instruction at trial:

> In order for the Trust Fund to be [estopped] from denying health insurance to Paul R. Peterson, the following must be shown:
>
> 1. The Trust Fund either *knew or should have known* the facts;
>
> 2. That its intended words and/or conduct would be acted on or so acted that Mr. Peterson had a right to believe it was so intended;
>
> 3. Mr. Peterson did not know the true facts;
>
> 4. He justifiabl[y] relied on the Trust's words and/or conduct to his injury.

(Emphasis added.) The trust fund, however, initially requested the following alternative instruction, citing *Ellenburg:*

> ... The doctrine of equitable estoppel applies if the following elements are present:

---

3. The alleged split in the federal circuits on the appropriateness of asserting estoppel in an ERISA action is well chronicled in *Black v. TIC Investment Corp.*, 900 F.2d 112, 114–15 (7th Cir. 1990), in which that court held that estoppel principles are applicable to benefit claims under "unfunded single-employer welfare benefit plans under ERISA." The *Black* court notes a "trend" since the late 1970s "to allow the use of estoppel," and cites case law from the ninth, eighth, sixth, first, second, and third circuits recognizing estoppel principles in ERISA actions. *Id.* at 114–15. The *Black* decision also recognizes a contrary view expressed in opinions by the fourth, tenth, and eleventh circuits. *See also* S. Bruce, *Pension Claims: Rights and Obligations* 404 (1988). Because we conclude this issue is precluded in this appeal by the doctrine of law of the case, we need not determine which view should have been applied in this case.

4. Because we conclude there was no change in the applicable law, we need not address the trust fund's contention that we are bound by the law of the ninth circuit.

1. The party to be estopped must engage in certain conduct or make representations to Plaintiff which are either false or which conceal material facts;

2. *The party to be estopped must know the true facts;*

3. He must intend that his conduct or representations shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

4. The latter must be ignorant of the true facts; and

5. The latter must rely on the former's conduct to his injury.

(Emphasis added.)

Although a prior trial court ruling had indicated that the *Ellenburg* test would be applied to this case,[5] the trial court indicated it intended to use, as the basis for its jury instruction, a more recent Arizona case that did not require a deceptive, fraudulent, or misleading representation to establish estoppel. *St. Joseph's Hosp. & Medical Center v. Reserve Life Ins. Co.,* 154 Ariz. 307, 317, 742 P.2d 808, 818 (1987). The following instruction was then given to the jury:

This Court has already ruled that plaintiff was not eligible to receive health and welfare benefits under the terms of defendant's health and welfare plan. Plaintiff claims that he should be entitled to those benefits under the legal doctrine of equitable estoppel. You may find that the doctrine of equitable estoppel applies if the following elements are present:

1. When one by his acts, representations or admissions *intentionally or through culpable negligence* induces another to believe and have confidence in certain material facts, and

2. The other justifiably relies and acts on such belief, and

3. It causes him injury.

If any of these elements are [sic] missing, the doctrine does not apply. Plaintiff must prove each of these elements by *clear and convincing proof.*[6]

(Emphasis added.) "Negligence" was defined as follows:

Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily careful person would act under the circumstances.

On appeal, the trust fund raises several issues regarding this instruction. First, it argues that the trial court erred in applying state common law, rather than federal common law, in fashioning this instruction. Second, the trust fund claims prejudice because this instruction deleted the "actual knowledge" requirement of federal common law estoppel principles. Finally, the trust fund argues that Peterson did not establish that his reliance on the trust fund's conduct was reasonable.

As a preliminary matter, we conclude that we do not need to decide whether federal or state common law applies to the equitable estoppel claim in this case.[7] Even assuming

5. We also note that Division Two indicated that a claim for estoppel was available under the following circumstances: "a nongovernmental party who has made a knowing false representation, or concealment of materials facts, to a party ignorant of the true facts, with the intention that the other party should rely on the representation, and the other party actually and detrimentally relies on it." Mem.Dec. at 6, quoting *Dockray,* 801 F.2d at 1155.

6. Peterson does not argue as a cross-issue that the trial court erred in applying the "clear and convincing" burden of proof to the equitable estoppel claim, and we therefore do not decide that issue. However, we note that the burden applied in the Arizona cases on which that standard was based have referred to proof of estoppel by "clear and satisfactory" evidence. *See, e.g., Knight v. Rice,* 83 Ariz. 379, 382, 321 P.2d

1037, 1038 (1958). We express no opinion on the accuracy of the burden of proof included in the jury instruction on estoppel in this case.

7. The trust fund correctly argues that even though state courts have concurrent jurisdiction with federal courts over ERISA-based claims, 29 U.S.C. § 1132, federal law must be applied to those claims, regardless of the forum. *See, e.g., Thurber v. Western Conf. of Teamsters,* 542 F.2d 1106 (9th Cir.1975). However, this case was not remanded by Division Two for adjudication of Peterson's ERISA claim, which was previously dismissed. Thus, no ERISA-based claim was existing at this point of the proceedings.

It is clear that federal common law is controlling over the preliminary issue whether the defense of estoppel is available in an action asserted against an ERISA fund. *Thurber,* 542 F.2d at

that a preemption argument is properly made, our threshold inquiry would be whether the trial court's instruction erroneously stated the federal common law requirements to establish estoppel. *See, e.g., Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1352 (8th Cir.1980) (finding state law to be in accord with federal common law contract principles in determining which law applied to an ERISA contract enforcement action that arose before ERISA became effective).

■ In this case, although the trial court cited the Arizona appellate decision in *St. Joseph's Hospital* as the basis for its jury instruction, that case relied in part on authority outside of Arizona for its statement of the elements of estoppel, including the "culpable negligence" standard. 154 Ariz. at 317, 742 P.2d at 818, citing 31 CORPUS JURIS SECUNDUM, *Estoppel* § 59 (C.J.S.) (1964 & Supp.1993). Among the elements of "equitable estoppel" defined in C.J.S. is the "culpable negligence" standard utilized by the trial court in this case. This standard is a well-known and generally recognized exception to the "actual knowledge" requirement of equitable estoppel:

> Ordinarily, actual or imputed knowledge of the material facts by the person claiming to be estopped, at the time of his acts ... giving rise to the estoppel, is essential to an equitable estoppel. It is sometimes said that actual knowledge of the facts is necessary; but generally it is not considered indispensable that the knowledge should be actual if the circumstances are such that a knowledge of the truth is necessarily imputed to the party sought to be estopped, or if he has actively and recklessly interfered to the prejudice of another; *and it is recognized that culpable or inexcusable negligence in not knowing the facts may be the equivalent of actual knowledge for the purpose of an estoppel.*

*Id.,* § 70 at 425–26 (emphasis added). Among the authorities cited by C.J.S. for the above standard are several federal cases that incorporate the "culpable negligence" mental state as an element of equitable estoppel under federal common law. *See, e.g., Maryland Cas. Co. v. United States,* 169 F.2d 102, 112 (8th Cir.1948) (contract enforcement action brought under 40 U.S.C. § 270a and b); *see also Rosenbaum v. Davis Iron Works, Inc.,* 669 F.Supp. 813 (E.D.Mich.1987), *aff'd in part and reversed in part,* 871 F.2d 1088 (6th Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989) (action to compel distribution of assets in ERISA pension plan).

Although the trust fund has cited several federal authorities that have used a more stringent "actual knowledge" element in their definition of equitable estoppel, it has not cited any authority for the proposition that the "culpable negligence" standard is inadequate to establish equitable estoppel as a matter of federal common law. Rather, the cited cases have not addressed that issue. *See, e.g., Ellenburg,* 763 F.2d at 1096 (party to be estopped must "know the facts"); *Dockray,* 801 F.2d at 1155 (party "made a knowing false representation or concealment of material facts"). However, as Peterson points out, other federal ERISA-based cases define equitable estoppel with no reference at all to actual knowledge. *See, e.g., Cleary v. Graphic Communications Int'l Union Supp. Retirement & Disability Fund,* 841 F.2d 444, 447 (1st Cir.1988) ("representation of fact made to the plaintiff"); *Black,* 900 F.2d at 115 ("one party has made a misleading representation to another party"). Therefore, even if the trust fund is correct that federal common law applied to this claim, it has failed to establish that the instruction given to the jury in this case would violate that law. We thus conclude that this jury instruction did not result in reversible error.[8]

1108, citing *Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942). Indeed, Division Two utilized federal law in making that determination in this case. However, it is less clear whether federal law or state law controls the determination of a state law tort claim on remand after dismissal of any ERISA-related claims.

Because we conclude that the jury instruction given in this case was not erroneous under federal common law principles, we need not decide whether state law could apply.

8. Because we conclude that "actual knowledge" was not a required element of equitable estoppel, we need not address the trust fund's argument

Finally, we flatly reject the trust fund's argument that the record contains insufficient evidence to establish that Peterson's reliance on any of the trust fund's conduct was justified or reasonable. Our inquiry in a challenge to the sufficiency of the evidence is to determine if a reasonable basis existed for the trial court's ruling or whether it was clearly erroneous. *Whittemore v. Amator*, 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986). In this case, the trust fund claims manager testified that telephone clerks who were specifically trained to respond to eligibility inquiries handled 84 to 90 calls a day from union members regarding their benefits. Thus, the trust fund had established an official procedure by which union members could receive current and presumably reliable information about their coverage. Peterson testified, and the trust fund presented no evidence to refute, that he utilized that proffered procedure when he called regarding his eligibility in January, February, March, and April 1983, was told that he had sufficient credit in his hour bank to maintain coverage through June, and could extend his coverage for twelve months thereafter by making self-payments of $96.00, at the expiration of which he could convert to a permanent policy. In reliance on this information, Peterson made self-payments for July and August and testified he "was well satisfied we were well covered," based on his history with the union since 1970. This constitutes sufficient evidence of Peterson's reasonable and justified reliance on the trust fund's representation of coverage as a required element of estoppel. The fact that the trust fund's official procedures for giving out eligibility information over the phone did not include a system of determining eligibility of owners/officers goes to the trust fund's culpable negligence, not Peterson's reliance. We thus conclude that this record contains sufficient evidence from which the trier of fact could find all the elements of equitable estoppel.

that the actual knowledge of David Wick, the account executive for the trust fund administrator, could not be imputed to the trust fund employees who gave Peterson eligibility information

## BIFURCATION OF LIABILITY AND DAMAGES ISSUES

The trust fund next argues that the trial court erroneously bifurcated the issues of liability and damages in an unauthorized *sua sponte* ruling. We disagree.

At the close of Peterson's case, the trust fund moved for a directed verdict, arguing, among other things, that Peterson had failed to establish that the medical expenses incurred would have been covered under the trust fund's benefits policy. In denying that portion of the motion, the court decided that the only issues to be presented to the advisory jury were to be those regarding liability on Peterson's estoppel claim and the trust fund's defense of "unclean hands." In addition, the court refused a requested jury instruction on the damages issue, on the basis that the issue was not before the advisory jury.

After considering the advisory jury's determinations, the court ruled that Peterson was entitled to plan benefits and initially entered a judgment for $87,992 in unreimbursed medical expenses, plus interest, attorneys' fees, and costs. After reviewing the trust fund's post-trial motions, the court determined that, because damages were "not an issue determined by the Court or jury," only the verdict finding coverage would stand, and the parties should attempt to determine the damages amount or advise the court to schedule a hearing. The parties subsequently stipulated that the net unreimbursed medical expenses Peterson would have been paid under the benefits plan totalled $66,345.67, and the court entered an amended judgment for that amount.

On appeal, the trust fund contends that the trial court was without authority to bifurcate the liability and damages stages of the trial. We do not believe, however, that the court's actions in this case were technically a "bifurcation" in the traditional sense contemplated under Rule 42(b), Arizona Rules of Civil Procedure.[9] This case did not involve two "tri-

over the phone and accepted his self-pay premiums.

9. Rule 42(b) provides:

als" on the liability and damages issues, but involved one bench trial in which the court utilized an advisory jury to help it determine limited issues. We find explicit authority for the court's discretion to do so in Rule 39(*l*), Arizona Rules of Civil Procedure:

> In all actions not triable of right by a jury the court upon motion *or of its own initiative* may try any issue with an advisory jury....

(Emphasis added.) This rule empowers the court not only to determine the issues in this case in the manner that it did, but allows the court to *sua sponte* allow the advisory jury to decide limited issues. We thus find no error in this regard.

### CROSS–APPEAL: PREJUDGMENT INTEREST

In his cross-appeal, Peterson contends the trial court erred in not awarding him prejudgment interest on his damages, which were based on the documented medical expenses that would have been covered by the benefits plan, computed from July 11, 1985, the date of his wife's death. He argues that, because the amount of unreimbursed medical expenses was readily ascertainable by mathematical calculation from that date, his damages were "liquidated," thus entitling him to prejudgment interest as a matter of right.[10] *See generally Fleming v. Pima County*, 141 Ariz. 149, 685 P.2d 1301 (1984). The trust fund disputes this allegation and also contends that Peterson did not make the specific "demand" necessary to entitlement to prejudgment interest. *See Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 124 Ariz. 242, 264–65, 603 P.2d 513, 535–36 (App.1979).

■ An award of prejudgment interest on a *liquidated claim* is a matter of right rather than discretion. *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261, 735 P.2d 1373, 1384 (App.1987). A claim is "liquidated" when "it is subject to mathematical computation without reliance upon opinion or discretion." *Id.*; *see also Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971) ("A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion").

Here, the trial court made the damages determination based on its adoption of the advisory jury's findings that the elements of equitable estoppel were proven and that Peterson did not act with unclean hands. In its discretion, based on those findings, the court accepted the parties' stipulation regarding medical expenses as a fair measure of damages. However, as the trust fund points out, before arriving at a computation of damages under the equities of this case, the trial court first erroneously entered a judgment awarding Peterson the full value of his claimed and documented medical expenses, in the amount of $87,992. When the trust fund pointed out that this was an improper measure of damages, the court directed the parties to attempt to stipulate or to set a hearing on the issue of damages. In reaching a stipulated amount, the parties needed to determine issues previously unaddressed at trial or in the pleadings, such as whether Peterson would have continued self-pay coverage for the entire twelve months, whether he would have converted to a private policy after that time, and what amounts of premiums and deductibles he would have incurred. The trust fund contends that these factors made the amount of damages unliquidated prior to judgment. We disagree.

---

*Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue....
The trial court has broad discretion in exercising this power to sever trial issues. *Cota v. Harley–Davidson*, 141 Ariz. 7, 684 P.2d 888 (App. 1984). Even if we were to find that the procedural order in which the issues were addressed constituted a "bifurcation" as contemplated by

this rule, we would find no abuse of discretion in this case.

10. Peterson also urges us to abandon the Arizona rule that prejudgment interest can only be awarded for liquidated claims. We decline to revisit a rule of law that has been adopted by the Arizona Supreme Court; Peterson's argument would be more appropriately addressed in that forum. *See LaPaz County v. Yuma County*, 153 Ariz. 162, 169 n. 1, 735 P.2d 772, 779 n. 1 (1987) (Feldman, V.C.J., dissenting).

In denying an award of prejudgment interest, the court ruled:

It has only been recently that the amount of medical expense has been determined. Plaintiff's counsel asked for sums ranging from the $70,000's to $80,000's— and finally the Judgment amount. These sums were not liquidated amounts.

■■■■ As a preliminary matter, we note that the fact that the amount of damages claimed differs from the amount ultimately awarded does not preclude an award of prejudgment interest. *Suciu v. Amfac Distrib. Corp.*, 138 Ariz. 514, 521, 675 P.2d 1333, 1340 (App.1983) (damages were liquidated even though plaintiff sued for $20,000 and jury awarded $17,260). All that is required is for a plaintiff to provide a basis for a precise calculation that would make the amount of damages readily ascertainable by reference to an agreement between the parties or through simple computation. *Berthot v. Courtyard Properties, Inc.*, 138 Ariz. 566, 675 P.2d 1385 (App.1983); *Fogleman v. Peruvian Assocs.*, 127 Ariz. 504, 622 P.2d 63 (App. 1980).

■■■ In this case, in which Peterson's claim was for wrongful denial of benefits under the trust fund's health insurance plan, the amount of his wife's total medical expenses became fixed and ascertainable upon the date of her death, July 11, 1985. To compute the net amount for which Peterson would be reimbursed if entitled to benefits under the plan, the trust fund had simply to refer to the provisions of its own policy regarding coverage, deductibles, and premium costs. The stipulation regarding damages indicates that this is precisely what the parties did once liability had been determined.[11] We find no evidence on this record that an identical calculation could not have been by the trust fund on July 11, 1985. We therefore conclude that Peterson's damages were liquidated.

In reaching this conclusion, we are mindful of the fact that Peterson's claim was based on equitable estoppel, which often involves as a measure of damages the extent of a plaintiff's reasonable reliance rather than a pure calculation of economic loss. *See generally* Dan B. Hobbs, *Handbook on the Law of Remedies*, § 2.4 at 52 (1973) (court must balance equitable factors to reach a "fair" result); *see also Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171 (Utah App.1993) (promissory estoppel damages based on reasonable reliance rather than economic loss were not liquidated). Indeed, we ordered the parties to submit supplemental briefing on the effect of the equitable nature of this claim on the issue whether damages were liquidated.

We are not convinced that the equitable basis of the claim precludes damages from being liquidated in this case, where the measure of damages was never considered to be anything but the readily ascertainable amount Peterson would have been entitled to under the trust fund benefit plan. Under these specific circumstances, therefore, we do not preclude an award of prejudgment interest simply because liability was imposed through equitable estoppel rather than a contract claim.

■■■ Having found Peterson's damages to be liquidated, we must also determine whether an appropriate demand was made. The record indicates that the trust fund was first put on notice of Peterson's expectation of coverage shortly after his wife was diagnosed with cancer on August 1, 1983, when the hospital called to verify coverage. The first formal "demand" by Peterson was made in his attorney's letter to the trustees, dated

---

11. The stipulation stated that the net amount of damages was based upon the following calculations:

| | | |
|---|---|---|
| $ | 84,863.26 | Total medical expenses incurred |
| – | 1,500.00 | Excess LPN expenses |
| – | 7,535.00 | Aetna premiums |
| – | 2,500.00 | Aetna co-insurance (20%) |
| – | 3,400.00 | Self-pay co-insurance (20%) |
| – | 1,416.00 | Self-pay premiums |

| | | |
|---|---|---|
| $ | 84,863.26 | Total medical expenses incurred |
| – | 1,000.00 | Aetna deductible |
| – | 100.00 | Self-pay deductible |
| – | 1,066.79 | Reduction for eyeglasses, psychiatric care, excess Skaggs bills |
| | (18,517.79) | Subtotal of offset |
| $ | 66,345.47 | Net amount payable under the plan as of July 11, 1985 |

May 30, 1984, seeking reimbursement of medical expenses "exceeding $16,000.00 to date," which explained, "These were for medical bills of his wife as a result of a cancer diagnosed in August, 1983." At the time Peterson's counterclaim and third party complaint were filed, those ongoing expenses for "hospital, doctor, laboratory, and related expenses" were alleged to exceed $50,000.00. Additional written demands were sent on May 25, 1988, February 2, 1989, and September 25, 1989, all prior to judgment, all placing the trust fund on notice of the nature of the demand with information from which a certain amount could be computed by requesting the itemized bills and reference to the benefits policy. On this record, we find that Peterson made the demand necessary to entitlement to prejudgment interest.

We hold that the trial court's denial of prejudgment interest under these circumstances was reversible error. We direct the trial court on remand to modify the judgment to include interest from July 11, 1985, on the net amount of $66,345.67. The judgment, so modified, is affirmed.

## ATTORNEYS' FEES

Peterson has requested an award of attorneys' fees on both the appeal and the cross-appeal under A.R.S. § 12–341.01 and 29 U.S.C. § 1132(g). Because Peterson has prevailed in this action, in the exercise of our discretion, we award him his reasonable attorneys' fees and costs, upon compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed in part; reversed and remanded in part.

LANKFORD and GRANT, JJ., concur.